# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ANTHONY MICHAEL MILANO,

    Plaintiff

v.

MARIAFE VITAL,

    Defendant

Case No.: 3:17-cv-00403-RCJ-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 32

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendant's Motion for Summary Judgment. (ECF Nos. 32, 32-1 to 32-3, 34, 34-1 to 34-6.) Plaintiff filed a response. (ECF No. 37.) Defendant filed a reply. (ECF No. 38.) Plaintiff filed a sur-reply. (ECF No. 39.)[1]

After a thorough review, it is recommended that Defendant's motion be granted.

## I. BACKGROUND

Plaintiff was an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se when he filed this action pursuant to 42 U.S.C. § 1983. At the time the court screened the complaint, he was no longer incarcerated. The events giving rise to this action took

---

[1] Under the Local Rules, a motion, response, and reply brief are permitted. A sur-reply, which is a response to a reply, is not permitted without leave of court, and is generally discouraged. LR 7-2(b). Defendant did not move to strike the sur-reply, and given its brevity, the court has exercised its discretion and considered it in connection with its analysis. In the future, Plaintiff is cautioned to seek leave of court before filing a sur-reply.

place while Plaintiff was housed at High Desert State Prison (HDSP). (*Id.*) The sole defendant is former HDSP Nurse Mariafe Vital.

On screening, Plaintiff was allowed to proceed with a single Eighth Amendment claim of deliberate indifference to a serious medical need. (ECF No. 5.) The defendant was initially named as Jane Doe, and subsequently identified and substituted as Mariafe Vital. (ECF Nos. 8, 9.)

Plaintiff alleges that he entered the custody of NDOC at HDSP on July 2, 2015, and that same day, he called a "man down" because he started vomiting, experienced vertigo and double vision, and was unable to control his bowel movements. He avers that prison officials admitted him to the infirmary. On July 20, 2015, he was sent to Valley Hospital and was diagnosed with multiple sclerosis (MS). Then, from October 2015 to November 2015, Plaintiff again started vomiting, experiencing vertigo and double vision, and was unable to control his bowel movements. He had to wait 45 days before seeing a neurologist who provided MS treatment. After the treatment, his symptoms subsided. He avers that during that time period, he put Defendant on notice he was suffering from these symptoms via formal and informal means of communication, including emergency grievance forms, medical kites, and verbally. He contends that Defendant failed to provide him with any treatment and told Plaintiff there was nothing she could do. He alleges that he suffered from unnecessary infliction of pain due to her failure to provide him with any treatment.

Defendant moves for summary judgment, arguing: (1) Plaintiff's Eighth Amendment rights were not violated as he received appropriate treatment after arriving at HDSP; (2) Defendant did not personally participate in the alleged constitutional violation as there is no evidence she denied Plaintiff medical care in any way, but requested a neurology appointment

1  for Plaintiff as soon as he returned from the hospital with the MS diagnosis; and (3) Defendant is

2  entitled to qualified immunity.

3  **II. LEGAL STANDARD**

4      The legal standard governing this motion is well settled: a party is entitled to summary

5  judgment when "the movant shows that there is no genuine issue as to any material fact and the

6  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

7  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

8  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

9  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

10 of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

11 judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

12 other hand, where reasonable minds could differ on the material facts at issue, summary

13 judgment is not appropriate. *Anderson*, 477 U.S. at 250.

14     "The purpose of summary judgment is to avoid unnecessary trials when there is no

15 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

16 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

17 of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

18 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

19 one party must prevail as a matter of law"). In considering a motion for summary judgment, all

20 reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

21 *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

22 *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

23 nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

1   477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

2   determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

3   *Anderson*, 477 U.S. at 249.

4       In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

5   "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

6   come forward with evidence which would entitle it to a directed verdict if the evidence went

7   uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

8   the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

9   *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

10  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

11  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

12  an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

13  party cannot establish an element essential to that party's case on which that party will have the

14  burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

15      If the moving party satisfies its initial burden, the burden shifts to the opposing party to

16  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

17  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

18  dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

19  be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

20  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

21  (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

22  by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

23  U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

Plaintiff began serving his sentence at HDSP on July 1, 2015, and was discharged and

released on November 25, 2017. (ECF No. 32-3 at 2.)

July 1, 2015, was Plaintiff's first day in prison at HDSP. There is a medical report of

incident, injury or unusual occurrence from that date, indicating a "man down" was called, and

Plaintiff reported he had been throwing up for four weeks. He was sent to the infirmary to be

referred to Dr. Sanchez (not a defendant in this action). The document is signed by N. Peret, CN

II. (ECF No. 34-1.) He was admitted to the infirmary, and it appears Dr. Sanchez prescribed

Omeprazole (an acid reflux medication), Levothyroxine (a thyroid medication), Mylanta (an

antacid), and Phenergan (an anti-nausea medication), and labs were ordered. (ECF No. 34-2 at

2.) He was monitored, given fluids, medications adjusted, and had more labs through July 20,

2015, when it was ordered that he be sent to the emergency room for persistent vomiting with

double vision and an inability to ambulate due to these problems. (ECF No. 34-2 at 2-4; ECF No.

34-3 at 6-10; ECF No. 34-6 at 3-8.)

He was hospitalized from July 20 to August 5, 2015, and during that time he was

diagnosed with MS. (ECF No. 34-3 at 10; ECF No. 34-5.)

On August 5, 2015, he was sent back to HDSP, where he was admitted to the infirmary

and given various medications. (ECF No. 34-2 at 4; ECF No. 34-3 at 10.) On August 6, 2015,

following his return to HDSP, there is an order that he be referred to the "URC" (Utilization

Review Committee) for a neurology consultation with Dr. Paul Janda per Valley Hospital's

recommendation for the diagnosis of MS. (ECF No. 34-2 at 5; ECF No. 34-3 at 10; ECF No. 34-5 at 2.)

Plaintiff continued to be monitored in the infirmary, with his medications renewed and adjusted, and labs ordered and reviewed. (ECF No. 34-2 at 5-8; ECF No. 34-3 at 10-15.) On October 10, 2015, there was a note that Plaintiff was concerned he had not seen the neurologist and wrote a grievance. The progress notes state there was an appointment scheduled, but they could not tell him when it was scheduled. (ECF No. 34-3 at 12.) There is an order on October 12, 2015, to follow up regarding the neurology appointment. (ECF No. 34-2 at 7.) He was discharged from the infirmary on November 3, 2015, but continued to be monitored as to his condition and medications. (ECF No. 34-2 at 9; ECF No. 34-3 at 10-15; ECF No. 34-6 at 9-23.)

While awaiting his neurology appointment, he was given anti-nausea, antacid, thyroid and painkiller medications to control his symptoms. He was continually monitored and his medications were adjusted. On November 20, 2015, he had the neurology appointment with Dr. Janda. At that time, he complained to the neurologist of limb parasthesias and gait impairment at times, but denied any other focal symptomology and also denied any visual symptomology. Dr. Janda's plan was to start him on Copaxone and Vitamin D daily; an MRI of the brain and CT of the spine were to be repeated in June of 2016; VEP/SSEP/BAER testing[2] was to be done at the clinic; a metabolic workup was to be done; and, Plaintiff was to maintain lifestyle modifications that were discussed at the visit. (ECF No. 34-5 at 5-6.)

---

[2] The literature included in the medical records indicates that this involves: somatosensory testing to evaluate nerve pathway from the peripheral nerve through the spine to the somatosensory region of the brain; visual testing checking the nerves that go from the eye to visual cortex; and, brainstem testing of the ear and brain for auditory and brainstem disorders.

**B. Eighth Amendment Deliberate Indifference Standard**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

Defendants do not contest that Plaintiff suffered from a serious medical need; therefore, the court's focus is on the subjective criteria: deliberate indifference. If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross

negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).  "'[A] prisoner need not prove that he was completely denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's

1    health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996));

2    *see also Edmo v. Corizon*, 935 F.3d 757, 786 (9th Cir. Aug. 2019) (citations omitted).

3    **C. Analysis**

4         Plaintiff alleges he was denied treatment for 45 days from October through November

5    2015, before his neurology appointment.

6         Defendant argues that the medical records reveal he received numerous medications to

7    control his symptoms during that time period, as well as medical visits to monitor his condition,

8    adjustment his medications and respond to his complaints. Defendant contends that in August

9    2015, she immediately referred Plaintiff to a neurologist after his MS diagnosis. Therefore, she

10   did not deny Plaintiff treatment.

11        Plaintiff confirms that he is alleging that Defendant denied him adequate medical care by

12   refusing him any treatment *after* his diagnosis at Valley Hospital. He acknowledges that

13   Defendant did request the neurology appointment upon his return from Valley Hospital. He also

14   acknowledges receiving various medications, but claims they did not work. He states that he

15   talked with Defendant and explained he was having a "second attack from MS" and she told him

16   "there's nothing I can do for you until you see a neurologist."

17        While Plaintiff claims that Defendant said there was nothing she could do for him until

18   he saw a neurologist, he offers no factual context for this statement, i.e. when it was made, what

19   he told Defendant about his condition, or what symptoms he was experiencing and whether he

20   advised her what he claimed was not being addressed. Further, the medical evidence before the

21   court demonstrates that Plaintiff did continue to receive care while he was waiting for his

22   neurology appointment: he received various medications, labs were ordered, he had visits with

23   providers and nurses where his symptoms were noted and addressed, and there were follow up

inquiries as to the appointment with the neurologist. While Plaintiff contends that the medications he received were not working, he does not present any specific evidence that he notified Defendant of this and that she failed to do anything. He does not suggest what care Defendant should have provided but did not. His complaint alleges that he put her on notice of his symptoms via emergency grievances, kites and verbal communications, but he does not submit or describe any of these alleged written or verbal statements he claims to have made to Defendant. Instead, the evidence demonstrates that Plaintiff continued to be monitored and provided with care until he could be seen by the neurologist.

Defendant has presented evidence that she provided Plaintiff with adequate medical treatment between the time he returned from Valley Hospital on August 5, 2015, and when he saw the neurologist in mid-November such that she was not deliberately indifferent to Plaintiff's medical needs. Plaintiff has not met his burden of submitting evidence that creates a genuine dispute of material fact as to whether Defendant was deliberately indifferent. He relies on a single conclusory statement attributed to the Defendant, without any specific factual references, which is insufficient to defeat a motion for summary judgment. In light of this conclusion, the court need not reach Defendant's qualified immunity argument.

In conclusion, summary judgment should be granted in Defendant's favor.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendant's motion for summary judgment.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report

and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

     2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.


Dated: October 8, 2019

 

                                        William G. Cobb
                                        United States Magistrate Judge